# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

EMELITO EXMUNDO,

                Plaintiff,

    v.

B. KANE, et al.,

                Defendants.

_____/

CASE NO. 1:08-cv-00822-DLB PC

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT

(DOC. 43)

## Order

## I.  Background

Plaintiff Emelito Exmundo ("Plaintiff") is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR").  Plaintiff is proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983.  This action is proceeding against Defendants B. Kane and A. Ross for retaliation in violation of the First Amendment and deliberate indifference to a serious medical need in violation of the Eighth Amendment.[1]  Pending before the Court is Defendants' motion for summary judgment, filed April 4, 2011.  Defs.' Mot. Summ. J., Doc. 49. Plaintiff filed his opposition on May 16, 2011.[2]  Pl.'s Opp'n, Doc. 54.  Defendants filed their

---

[1] There is no private cause of action for damages arising out of an alleged violation of the Cruel or Unusual Punishment Clause of the California Constitution, *Giraldo v. Department of Corrections & Rehabilitation*, 168 Cal. App. 4th 231, 253-57 (2008), or Article I, section 3(a) of the California Constitution for redress of grievances, *MHC Financing Limited Partnership Two v. City of Santee*, 182 Cal. App. 4th 1169, 1188 (2010).

[2] Plaintiff was informed of the requirements for opposing a motion for summary judgment by a Court order on November 25, 2009.  Second Informational Order, Doc. 13; *see Rand v. Rowland*, 154 F.3d 952, 955-56 (9th Cir. 1998) (en banc).

1 reply on May 24, 2011.  Defs.' Reply, Doc. 55.

2        On November 9, 2011, the Court granted Defendants leave to supplement their motion to

3 address Plaintiff's Eighth Amendment claim.  On November 21, 2011, Defendants filed their

4 supplement to their motion for summary judgment.  Doc. 56.  On March 1, 2012, Plaintiff filed

5 his opposition to the supplement.  Docs. 61, 62, 63, 64.  On April 4, 2012, Defendants filed their

6 reply.  Doc. 67.  The matter is submitted pursuant to Local Rule 230(l).

7 **II.    <u>Summary Judgment Standard</u>**

8        Summary judgment is appropriate when it is demonstrated that there exists no genuine

9 dispute as to any material fact, and that the moving party is entitled to judgment as a matter of

10 law.  Fed. R. Civ. P. 56(a).  Under summary judgment practice, the moving party

11        always bears the initial responsibility of informing the district court of the basis
          for its motion, and identifying those portions of "the pleadings, depositions,
12        answers to interrogatories, and admissions on file, together with the affidavits, if
          any," which it believes demonstrate the absence of a genuine issue of material
13        fact.

14 *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the

15 burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made

16 in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on

17 file.'"  *Id.* at 324.  Indeed, summary judgment should be entered, after adequate time for

18 discovery and upon motion, against a party who fails to make a showing sufficient to establish

19 the existence of an element essential to that party's case, and on which that party will bear the

20 burden of proof at trial.  *Id.* at 322. "[A] complete failure of proof concerning an essential

21 element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.*  In

22 such a circumstance, summary judgment should be granted, "so long as whatever is before the

23 district court demonstrates that the standard for entry of summary judgment, as set forth in Rule

24 56(c), is satisfied."  *Id.* at 323.

25        If the moving party meets its initial responsibility, the burden then shifts to the opposing

26 party to establish that a genuine dispute as to any material fact actually does exist.  *Matsushita*

27 *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

28        In attempting to establish the existence of this factual dispute, the opposing party may not

2

1  rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the

2  form of affidavits, and/or admissible discovery material, in support of its contention that the

3  dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must

4  demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

5  suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Thrifty*

6  *Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2002); *T.W. Elec.*

7  *Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the

8  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

9  nonmoving party, *Long v. County of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006); *Wool v. Tandem*

10  *Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

11          In the endeavor to establish the existence of a factual dispute, the opposing party need not

12  establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

13  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

14  trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce

15  the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

16  *Matsushita*, 475 U.S. at 587 (quoting former Rule 56(e) advisory committee's note on 1963

17  amendments).

18          In resolving a motion for summary judgment, the court examines the pleadings,

19  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

20  any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, *Anderson*, 477

21  U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

22  court must be drawn in favor of the opposing party, *Matsushita*, 475 U.S. at 587 (citing *United*

23  *States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). Nevertheless, inferences are not

24  drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from

25  which an inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-

26  45 (E. D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

27          Finally, to demonstrate a genuine dispute, the opposing party "must do more than simply

28  show that there is some metaphysical doubt as to the material facts. . . .Where the record taken as

1  a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

2  issue for trial.'" *Matsushita*, 475 U.S. at 586-87 (citations omitted).

3  **III.   Statement Of Facts[3]**

4         Plaintiff is a state inmate, serving life without parole for first degree murder. Pl.'s Dep.

5  12: 12-17, Aug. 26, 2010.[4]  Plaintiff is currently incarcerated at Pleasant Valley State Prison

6  (PVSP). Pl.'s Dep. 12:18-22. Plaintiff has no education or employment experience in the

7  medical field. Pl.'s Dep. 13:6-15:20. Plaintiff was a participant in the Mental Health Delivery

8  system at the Correctional Clinical Case Management System (CCCMS) level of care. Def.'s

9  Ex. 1.

10        **A.   March 21, 2007 Incident**

11        On the morning of March 21, 2007, Defendant Kane was working in the pill-window in

12  the satellite medical clinic in Facility "A." Kane Decl. ¶ 2; Defs.' Ex. 1.  The pill window was

13  used to dispense direct observation therapy (DOT) medications.  Medication administered as

14  DOT means that the dispensing nurse watches the inmate swallow the medication, and examines

15  the inmate's open mouth to help insure that the inmate actually swallowed the medication.  Kane

16  Decl. ¶ 3; Pl.'s Dep. 45:2-19.  Defendant Kane was aware through her training and experience

17  that medications are administered by DOT in several instances including: 1) when they affect the

18  inmate's physiological stability; 2) when they are potentially dangerous; or 3) when they can be

19

20        [3] All facts are considered undisputed, unless otherwise noted. Pursuant to Local Rule 260(b) and
Federal Rule of Civil Procedure 56(c), all disputes with the movant's statement of facts must be
21  supported with citation to evidence. *See* L. R. 260(b) (parties opposing Statement of Undisputed Facts
shall deny those that are disputed, "including with each denial a citation to the particular portions of any
22  pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support
of that denial"). Plaintiff's opposition does not include citation to each fact that is disputed, but includes
23  a declaration and exhibits in support.  Plaintiff's declaration will be considered to the extent that it is
made on personal knowledge, sets out facts that would be admissible in evidence, and shows that he is
24  competent to testify on the matters stated. Fed. R. Civ. P. 56(c)(4).  The Court will consider only those
facts and evidence that are relevant to resolving the motion for summary judgment.

25

26        [4] Plaintiff contends that he did not have the opportunity to review his deposition pursuant to
Rule 30(e) of the Federal Rules of Civil Procedure. Pl.'s Opp'n 3:13-25.  Plaintiff contends that
27  correctional officers at his prison intentionally dropped the deposition in a pool of water in front of
Plaintiff's cell. Plaintiff's arguments are unpersuasive.  At no point was this raised as a concern until the
28  motion for summary judgment was filed.  Plaintiff also fails to demonstrate that there are any meaningful
issues with the deposition that was lodged with the Court.

1   bartered or sold to other inmates.  Kane Decl. ¶ 4.

2         Defendant Kane was aware through her training and experience that inmates will

3   sometimes pretend to swallow medications, but actually hide the medications at the back of the

4   throat, under the tongue or between the check and gums.  Kane Decl. ¶ 5; Pl.'s Dep. 47:4-24.

5   This practice is known as "cheeking."  Defendant Kane was aware through her training that

6   cheeking medications is a rules violation for many reasons, including: 1) It gives medical staff

7   the impression that the inmate is medication-compliant when he is not. Such a false impression

8   can seriously and adversely affect the inmate's treatment program. 2) Inmates will cheek and

9   horde medications and take them all at once-either to get "high" or commit suicide, and 3)

10  Inmates will cheek and horde medications to barter or sell to other inmates. Any of these

11  practices can seriously and adversely affect the health of inmates and the safety and security of

12  the institution.  Kane Decl. ¶ 6.

13        On the morning of March 21, 2007[5], Plaintiff's prescriptions called for four medications

14  to be administered by DOT: Gabapentin (Neurontin); Buspirone (Buspar); Quetiapine (Seroquel)

15  and Fluoxetine (Prozac).  Kane Decl. ¶ 9; Def.'s Ex. 2; Pl.'s Dep. 54:8-56:21. While

16  administering Plaintiff's medications by DOT at the pill window on the morning of March 21,

17  2007, Defendant Kane contends that she saw Plaintiff attempt to cheek his medication by

18  simulating swallowing.  Defendant Kane contends that when she examined Plaintiff's open

19  mouth, she saw Prozac on the back of his tongue.  Defendant Kane contends that she ordered him

20  to swallow the tablet.  After ignoring repeated requests, Plaintiff finally complied.  Kane Decl. ¶

21  10; Def.'s Ex. 1.

22        Plaintiff contends that he has a very sensitive throat which makes it impossible for him to

23  hide the drug on the back of his throat.  Pl.'s Opp'n 4:22-24.  Plaintiff further contends that the

24  medication administration record (MAR) indicates that Buspirone, not Prozac, was the

25  medication marked as cheeking.  *See* Defs.' Mot. Summ. J., Ex. 2, MAR for Mar. 2007.  Plaintiff

26  contends that on the morning of March 21, 2007, he arrived at the pill window with a cup of

27

28        [5]  Defendants listed "March 21, 2006" as the date in question.  The Court presumes that is error, as all the events in this action occurred in 2007.

water.  Pl.'s Decl. ¶ 5, Doc. 50 at 36 of 111.  Plaintiff gave his ID to Defendant Kane who held

onto the ID to ensure that Plaintiff took his medication.  *Id.*  Plaintiff's gabapentin and Tylenol-3

had a crush order with water.  Defendant Kane also crushed Plaintiff's other medication and

placed the pills in the cup.  *Id.*  Plaintiff first showed her that his cup had water.  After he

swallowed his medication, Plaintiff had to show his cup again to show the water had been

consumed.  Plaintiff also had to show his mouth.  Defendant Kane gave back Plaintiff's

identification.  She then called Plaintiff back and asked for his identification, and told Plaintiff

that he was cheeking his medication.  *Id.*

Defendant Kane wrote a Rules Violation Report (RVR) for Plaintiff's failure to comply

with medical procedures.  Kane Decl. ¶ 11; Defs.' Ex 1.  Defendant Kane wrote the RVR for

Plaintiff's failure to comply with medical procedures because she believed Plaintiff had

attempted to cheek his medication on March 21, 2007.  Kane Decl. ¶ 11.  After a hearing on

March 27, 2007, Plaintiff was found guilty and assessed a 30-day loss of good-time credits as

well as a 30-day loss of dayroom and telephone privileges.  Pl.'s Dep. 74:5-22; Defs.' Ex. 1. The

guilt finding has not been overturned. Pl.'s Dep. 79:21-80:10.  Defendant Kane contends that she

did not write the RVR against Plaintiff in retaliation for any inmate appeals (CDCR form 602) or

ADA Modification or Accommodation Requests (CDCR form 1824) that Plaintiff had filed.

Kane Decl. ¶ 12.  At the time of the March 21, 2007 incident, and when Defendant Kane wrote

the RVR, Defendant Kane was not aware of any inmate appeals or ADA Modification or

Accommodation Requests that Plaintiff had filed.  Kane Decl. ¶ 12.

Plaintiff claims Defendant Kane wrote the RVR in retaliation for two appeals: one with

log number PVSP 07-00990; and the other with no log number, dated March 20, 2007.  Pl.'s

Dep. 81:4-16; 92:9-95:9; 99:16-110:1; Pl.'s Dep. Ex. 5; Compl., Ex. F-1.  Appeal PVSP

07-00990 started as a CDCR form 1824 dated February 1, 2007.  Plaintiff mailed the form 1824

to the appeals coordinator office by institutional mail.  Pl.'s Dep. 71:18; 82: 11-14; 84:9-86:15;

Pl.'s Dep. Ex. 5.  Plaintiff describes the problem in the form 1824 as follows: "Corrections

Officers had been asking me proof of my disabilities. And I have been stopped from going to

chow and I was reprimanded and told that I cannot go to the yard because I am slow.  I have been

1    asked for my chronos.  I have to stand in line a long time to get my medication."  Pl.'s Dep. Ex.

2    5, last page.  Plaintiff requested the following relief in the form 1824: "Renew my chronos for

3    sunglasses, lower bunk and lower tier chrono, double mattress chrono, back brace and knee brace

4    and to be placed on the DNY and DNM list."  Pl.'s Dep. Ex. 5, last page.  Appeal PVSP

5    07-00990 was partially granted.  Pl.'s Dep. 109:2-110:1.

6          The other appeal that Plaintiff claims Defendant Kane was retaliating for is dated March

7    20, 2007.  Pl.'s Dep. 92:9-95:9; 97:23-98:19; Compl. Ex F-1.  In his March 20, 2007 appeal,

8    Plaintiff requested to be referred to a pain specialist and an ophthalmologist. This appeal was

9    partially granted. Pl.'s Dep. 94:3-95:9; Compl. Ex F-1.   Plaintiff testified at his deposition that

10   he placed the appeal in the "medical box" the night of March 20, 2007.  Plaintiff then changed

11   his testimony, stating he gave the appeal to an unknown nurse at the pill window the night of

12   March 20, 2007.  Pl.'s Dep. 73:5-18; 95:10:-96:18.  Nurses at the pill window do not process,

13   and will not accept, inmate appeals.  Morgan Decl. ¶ 3. Plaintiff contends that he submitted the

14   unmarked March 20, 2007 grievance directly to an unknown nurse at the pill window.  Pl.'s

15   Opp'n 15:8-17.  The appeals were returned to Plaintiff by institutional mail. Institutional mail

16   may take several days to deliver.  Morgan Decl. ¶ 4.  Plaintiff had seen Defendant Kane many

17   times before March 21, 2007, without any incident.  Plaintiff testified at his deposition that the

18   March 21, 2007 incident was a "surprise" because he had not experienced any animosity from

19   Defendant Kane.  Pl.'s Dep. 30:24-31:25.

20        **B.    May 2007 Incident**

21        Defendant Kane contends that she was working the pill-window on May 21, 2007.[6] The

22   nurse working the pill-window has each inmate's MAR which keeps track of what and when

23   medications are given to a particular inmate. The far left column lists the prescriptions, with

24   "start" and "stop" dates. Kane Decl. ¶¶ 7, 14.   Defendant Kane cannot dispense prescription

25   medications without a current prescription. If an inmate's prescription runs out, Defendant Kane

26   cannot dispense the medication.  Defendant Kane  Decl. ¶ 13.  On May 21, 2007, Plaintiff's

27

28        [6] Defendants had listed the date as "May 24, 2007."  The Court presumes this is error, and has corrected the date.

7

1  prescription for Neurontin ran out. The prescription in the MAR ends on that day. The word

2  "stop" is written on that day in the MAR.  Kane Decl. ¶ 15; Ex. 3.  Defendant Kane did not

3  dispense Neurontin to Plaintiff on May 21, 2007, solely because the prescription ran out.

4  Defendant contends that she did not refuse to give him Neurontin that day in retaliation for any

5  other reason.  Kane Decl. ¶ 15; Def.'s Ex. 3.  The next day, Dr. Vilasayne prescribed Neurontin

6  for Plaintiff.  Plaintiff was given Neurontin on May 22, 2007.  Pl.'s Dep. 116:4-23; Def.'s Ex. 3,

7  4.

8         Plaintiff contends that Defendant Kane failed to provide his pain medication on May 24,

9  2007.  Pl.'s Decl. ¶ 10. Plaintiff contends that Defendant Kane did not work on May 21, 2007.

10  Pl.'s Opp'n 5:3-17.  Plaintiff contends that he was mislead by Defendant Kane into believing that

11  his medication had been discontinued based on her word to Dr. Vilaysane.  *Id.*  It was standard

12  practice by the doctor to discontinue a medication and prescribe the new medication.  *Id.*

13        **C.    November 22, 2007 Incident**

14         On the early evening of November 22, 2007, Defendant Ross was working the

15  pill-podium in Facility "A."  Ross Decl. ¶ 2. The pill podium was used to dispense DOT

16  medications. Medication administered as DOT means that dispensing nurse watches the inmate

17  swallow the medication, and examines the inmate's open mouth help insure that the inmate

18  actually swallowed the medication. This was done as a precaution against cheeking.  Ross Decl.

19  ¶¶ 2, 5; Pl.'s Dep. 45:2-19.  Defendant Ross was aware through her training that inmates will

20  sometimes cheek their medications. Ross Decl. ¶ 3; Pl.'s Dep. 47:4-24.  Defendant Ross was

21  aware through her training that cheeking medications is a rules violation for many reasons,

22  including: 1) It gives medical staff the impression that the inmate is medication-compliant when

23  he is not; 2) Inmates will cheek and horde medications and take them all at once--either to get

24  "high" or commit suicide; and 3) Inmates will cheek and horde medications to barter or sell to

25  other inmates. Any of these practices can seriously and adversely affect the health of inmates and

26  the safety and security of the institution.  Ross Decl. ¶ 3.

27         The nurse working the pill-podium has each inmate's MAR which keeps track of what

28  and when medications are given to a particular inmate. The far left column lists the prescriptions.

1   Next to each prescription are 31 columns for each day of the month. Four sections under each

2   day records whether the medication was given morning (08), noon (12), evening (18) or night

3   (20). The nurse administering the medication will initial the box indicating the date and time the

4   medication was given. The MAR is maintained in the ordinary course of business, the data is

5   entered and kept in the course of regularly conducted business activity by the medical staff, at or

6   near the time the information is received.  Ross Decl. ¶ 4.

7        At that time, the inmates receiving medication would come to the podium with a cup of

8   water. The inmate would give the nurse his identification card, and the nurse would have the

9   inmate's MAR and the medication in a cart arranged alphabetically by the inmates' last name.

10  The nurse would then read the MAR's prescription column to determine the correct dosage, time

11  and method of administration. The nurse would pull the medications from the cart in accordance

12  with the MAR and give them to the inmate. If the prescription was for multiple pills, the inmate

13  could swallow them all at once, or one at a time, if he preferred. For DOT medications, an inmate

14  was required to open his mouths and lift his tongue to show he swallowed the medications. This

15  was done as a precaution against cheeking.  Ross Decl. ¶ 5.

16       On the evening of November 22, 2007[7], Plaintiff's prescriptions called for five

17  medications to be administered by DOT: Gabapentin (Neurontin); Aceta/Codeine (Tylenol-3);

18  Buspirone (Buspar); Phenytoin (Dilantin) and Diphenhydramine (Benadryl).  Ross Decl. ¶ 6;

19  Pl.'s Dep. 141:19-24; Def. Ex. 5.  Plaintiff's prescription for Neurontin called for it to be crushed

20  and given in water.  Ross Decl. ¶ 6; Def.'s Ex. 5.  Plaintiff's prescription for Tylenol-3 was one

21  30 mg tablet. Ross Decl. ¶ 6; Def.'s Ex. 5.  Plaintiff's prescription for Buspar was one, small 15

22  mg.tablet. Ross Decl. ¶ 6; Def.'s Ex. 5.  Plaintiff's prescription for Dilantin was three 100 mg

23  tablets. Ross Decl. ¶ 6; Def.'s Ex. 5.  Plaintiff's prescription for Benadryl was three 50 mg pills

24  (either tablets or capsules). Ross Decl. ¶ 6; Def.'s Ex. 5.  Defendant Ross contends that an inmate

25  can easily fit these eight pills under the tongue all at once.  Ross Decl. ¶ 6.

26       Defendant Ross gave Plaintiff these eight pills.  Defendant Ross contends that she saw

27

28       [7] Defendants list the date as "November 22, 2006. " The Court presumes this is error, and has
    corrected the date.

9

1   Plaintiff lift his tongue to the roof of his mouth, place the medications under his tongue, and start
2   to walk away.  Defendant Ross contends that she ordered him to lift his tongue and saw the
3   medications under his tongue.  Defendant Ross contends that she ordered him to swallow his
4   medications, and Plaintiff would not comply.  Defendant Ross contends that she repeatedly
5   ordered him to swallow his medications, and Plaintiff repeatedly refused to comply.  Finally,
6   Defendant Ross contends that she had to call a correctional officer over.  Plaintiff then quickly
7   swallowed the medication before the officer intervened. Ross Decl. ¶ 7.  Defendant Ross wrote a
8   RVR for Plaintiff's failure to comply with medical procedures.  Ross Decl. ¶ 7.  Def.'s Ex. 6.
9   Defendant Ross wrote the RVR because she believed Plaintiff had attempted to cheek his
10  medication on November 22, 2007.  Ross Decl. ¶ 8.

11        Plaintiff contends that it would be stupid to put all the pills under his tongue because
12  Defendant Ross would be able to see them if Plaintiff lifted his tongue.  Pl.'s Opp'n 6:12-24,
13  Doc. 50.  Plaintiff contends that the Neurontin and Tylenol-3 had been crushed and mixed with
14  water, so there was no way Defendant Ross could have seen the medication in his mouth.  Pl.'s
15  Decl. 9:14-19, Doc. 50.

16        At a hearing on December 20, 2007, Plaintiff was found not guilty because the LVN log
17  showed that Defendant Ross did not sign in that day.  Ross Decl. ¶ 9; Def.'s Ex. 6.  Before the
18  November 22, 2007 incident, all interactions between Defendant Ross and Plaintiff were normal.
19  Plaintiff had seen Defendant Ross many times before November 22, 2007, without any incident.
20  Plaintiff testified at his deposition that the November 22, 2007 incident was a "surprise" because
21  he had not experienced any animosity from Defendant Ross. Pl.'s Dep. 140:13-141:5.  Plaintiff
22  claims that Defendant Ross was retaliating for his appeal against a correctional officer Mendoza.
23  That appeal, a CDCR form 1824 ADA request, is dated November 18, 2007.  Pl.'s Dep.
24  150:24-151:16; Compl., Ex. N-1.

25        In the November 18, 2007 appeal Plaintiff claims that correctional officer Mendoza
26  insulted him by asking if he was deaf.  Compl. Ex. N-1.  Plaintiff gave the appeal to Mendoza on
27  November 18, 2007.  Pl.'s Dep. 151:17-152:1.  Plaintiff later withdrew the appeal against
28  Mendoza.  Pl.'s Dep. 152:2-153:10.  Defendant Ross contends that she had no knowledge of

1  Plaintiff's appeal against Mendoza when she wrote the RVR for cheeking.  Ross Decl. ¶ 10.  At

2  the time of the November 22, 2007 incident, and when Defendant Ross wrote the RVR, she

3  contends that she was not aware of any inmate appeals or ADA Modification or Accommodation

4  Requests that Plaintiff had filed.  Ross Decl. ¶ 10.  Defendant Ross contends that she did not

5  write the RVR against Plaintiff in retaliation for any inmate appeals or ADA Modification or

6  Accommodation Requests that Plaintiff had filed.  Ross Decl. ¶ 11.[8]

7          **D.      Eighth Amendment**

8          Plaintiff testified at his deposition that Defendant Kane refused to give him Neurontin on

9  May 24, 2007, saying it was discontinued by the doctor. Pl.'s Dep. 112:18-115:11.  Plaintiff

10  testified at his deposition that Neurontin was discontinued for only one day by Dr. Vilaysane.

11  Pl.'s Dep. 115:19-116:23.  Defendant Kane contends that the only day in May 2007 that Plaintiff

12  did not receive Neurontin was May 21, 2007.  Kane Dec. ¶ 14; Defs.' Ex. 3.  On May 24, 2007,

13  the MAR indicates that Plaintiff was given his prescription for Neurontin at 8:00 a.m., 12:00

14  p.m., and 6:00 p.m.  Defendant Kane's initials appear on the MAR showing that she gave him

15  this medication at 6:00 p.m.  Defs.' Ex. 3.

16          Plaintiff alleges that his pain medication and anti-seizure medication was discontinued

17  from December 2 until December 19, 2007. Compl. ¶ 9, p. 9.  Plaintiff received Phenytoin

18  (Dilantin), an anti-seizure medication, every day in December 2007.  Suppl. Ross Dec.; Defs.'

19  Ex. 10.  Plaintiff had no seizures in December 2007, the month his anti-seizure medication was

20  allegedly discontinued.  Plf.'s Dep. 20:9-23:9.  Dr. Vilaysane discontinued Plaintiff's pain

21  medication Gabapentin (Neurontin) and Aceta/Codeine (Tylenol-3) because Plaintiff was

22  allegedly cheeking his medication.  Defs.' Ex. 11.  The nurses have no authority to prescribe

23  medication, or discontinue or renew prescriptions.  Kane Decl. ¶ 13; Suppl. Ross Decl. ¶ 2.

24

25  _____

26          [8] Defendants include additional facts that Plaintiff was found guilty of other offenses for
purchasing pills after the alleged incidents.  Such facts are not material to the claims here and are
omitted.

27          Defendants also contend that Plaintiff has filed other grievances after the March 21, 2007
incident, to demonstrate that his First Amendment rights were not chilled.  For reasons stated below, that

28  argument is unpersuasive.

1   Defendant Ross contends that she did not have any involvement in Dr. Vilaysane's decision to

2   discontinue Plaintiff's pain medication.  Suppl. Ross Decl. ¶ 3.  When she wrote the November

3   22, 2007 rules violation report accusing Plaintiff of attempting to cheek his medication,

4   Defendant Ross contends that she did not know or expect that Dr. Vilaysane would discontinue

5   Plaintiff's pain medication as a result.  Suppl. Ross Decl. ¶ 4.

6          Plaintiff has chronic back pain and suffers from migraine-like headaches.  Pl.'s Brief

7   11:6-7, Doc. 62.  Without the pain medication, his pain is unbearable, and Plaintiff loses sleep,

8   appetite, ability to walk, and concentration.  *Id.* at 11:9-11.[9]  Plaintiff contends that it is standard

9   practice at the prison for an inmate accused of cheeking to have his medication discontinued.

10  Pl.'s Statement 5:25-6:3, Doc. 63.[10]

11  **IV.    Analysis**

12         **A.    Retaliation**

13         Allegations of retaliation against a prisoner's First Amendment rights to speech or to

14  petition the government may support a § 1983 claim.  *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th

15  Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v.*

16  *Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First

17  Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some

18  adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that

19  such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did

20  not reasonably advance a legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-

21  68 (9th Cir. 2005); *see Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Rhodes*

22  regarding elements of retaliation in prison context).  At the summary judgment stage, Plaintiff is

23  required to demonstrate that there remains a genuine dispute of material fact as to each element

24  _____

25         [9]  Plaintiff also includes an extensive list of diseases that he allegedly has.  Pl.'s Brief 10:20-
    11:6.  However, Plaintiff is not a medical professional and thus lacks the competency to testify on the
26  matter.  Fed. R. Civ. P. 56(c)(4), Fed. R. Evid. 703.

27         [10]  Plaintiff makes repeated mention of alleged retaliation by Defendant Kane on January 26,
    2008.  Those claims were dismissed without prejudice for failure to exhaust administrative remedies on
28  May 7, 2010.  Doc. 34.

1   of the claim. *Brodheim v. Cry*, 584 F.3d 1262, 1269 n.3 (9th Cir. 2009).

2       It is undisputed that Plaintiff's filing of inmate grievances constituted protected conduct.

3   Defendants contend, however, that there was no retaliatory motive by either Defendant, and that

4   their actions were in furtherance of a legitimate penological goal. Defs.' Mem. P. & A. 9:22-

5   13:27. Defendants further contend that Plaintiff's claim against Defendant for the March 20,

6   2007 RVR for cheeking cannot proceed because Plaintiff did not overturn the finding of guilt.

7   *Id.* at 14:3-20. Defendants finally contend that they are entitled to qualified immunity. *Id.* at

8   14:23-16:9.[11]

9           1.    **March 21, 2007 Incident**

10               a.    **Legitimate Penological Goals**

11      Defendant Kane contends that she acted in furtherance of a legitimate penological goal.

12  Defendants contend that preventing inmates from cheeking serves a legitimate penological goal

13  because 1) cheeking gives medical staff the impression that inmates are medication-compliant

14  when they are not, 2) inmates cheek and horde medication to either get high or commit suicide,

15  and 3) inmates will cheek and horde medication to sell to other inmates. Defs.' Mem. P. & A.

16  12:3-13:27.

17      Plaintiff does not deny the legitimate penological goals to prevent inmates from cheeking.

18  However, Plaintiff contends that on the day of the March 21, 2007 incident, it was not reasonable

19  for him to cheek because prozac is not a medication that inmates cheek, and the prozac was

20  crushed, and thus would have been impossible to cheek. Plaintiff also contends that the March

21  21, 2007 RVR is unsupported by the MAR, which indicates that it was Buspar, not Prozac, that

22  was listed for cheeking. Plaintiff contends that all his medication had been crushed and mixed

23  with water. Plaintiff contends that he drank all the water.

24

25  _____

26  [11] Defendants also contend that Plaintiff has filed other grievances after the March 21, 2007
    incident, and thus Plaintiff was not chilled in the exercise of his First Amendment rights. That, however,
    is not the standard. The chilling effect need only be sufficient to affect a person of ordinary firmness.
27  *Rhodes*, 408 F.3d at 568-69. Filing a RVR against an inmate is a sufficient adverse action to chill a
    person of ordinary firmness from engaging in First Amendment activity. Thus, there remains an issue of
28  material fact regarding a chilling effect on Plaintiff's First Amendment activity.

1       Construing all facts in the light most favorable to Plaintiff as the non-moving party, there

2   remains a triable issue of material fact as to whether the RVR was in furtherance of a legitimate

3   penological goal.  There remains a dispute as to whether the prozac pill had been crushed such

4   that it would not have been cheeked, which raises a triable issue as to whether the RVR was

5   false.  If the RVR is false, it clearly would not serve a legitimate penological goal.  Defendant

6   Kane's  motion for summary judgment is denied on these grounds.

7                                  **b.    <u>Causation</u>**

8       Defendant Kane contends that she was unaware of any earlier appeals or grievances

9   written by Plaintiff.  Defs.' Mem. P. & A. 10:14-21.  Thus, Defendants contend that there is no

10  causal link between Defendant Kane's adverse action and Plaintiff's protected conduct.  *Watison*,

11  668 F.3d at 1114 (citing *Pratt*, 65 F.3d at 808).  Neither party disputes that filing a RVR against a

12  prisoner is an adverse action for purposes of retaliation.  *Hines v. Gomez*, 108 F.3d 265, 267 (9th

13  Cir. 1997).  To show that the protected conduct was the substantial or motivating factor behind

14  the Defendant's adverse action, Plaintiff must put forth evidence of a retaliatory motive, which

15  taken in the light most favorable to Plaintiff as the non-moving party, presents a genuine issue of

16  material fact as to Defendant's intent.  *Brodheim*, 584 F.3d at 1271.  Plaintiff testified at his

17  deposition that the alleged retaliatory motive stems from two inmate grievances: PVSP 07-00990

18  and an unmarked inmate grievance filed March 20, 2007.

19      Grievance No. PVSP-07-00990 concerned Plaintiff's issues with correctional officers

20  making Plaintiff wait in long lines for his medication and asking for his medical chronos.  Pl.'s

21  Dep., Ex. 5.  Plaintiff requested as relief that he receive a renewal of his chronos, and be placed

22  on DNY and DNM lists.  Defendants contend that because this grievance does not implicate

23  Defendant Kane, it does not demonstrate how she was aware that the grievance was filed.

24      The unmarked grievance filed March 20, 2007 concerned not having seen an

25  ophthalmologist and pain specialist.  Pl.'s Compl., Ex. F-1.  Plaintiff contends that this grievance

26  was submitted directly to an unnamed nurse at the medical clinic, or submitted in the box in front

27  of the window.  The appeal was reviewed by LVN Valdez, who then returned a response at the

28  informal level on April 3, 2007.  Pl.'s Dep. 94:10-98:10.

1    Defendants have met their burden of demonstrating that there is no triable issue of

2 material fact with regards to causation.  Defendant Kane was not the subject of grievance No.

3 PVSP 07-00990 or the March 20, 2007 grievance, and did not respond to either.  There is thus no

4 evidence or other documentation which would indicate that she was even aware that those

5 grievance had been filed, or that she took adverse action because Plaintiff filed those grievances.

6 The burden now shifts to Plaintiff to demonstrate that there is a triable issue of material fact

7 demonstrating a causal relationship between Defendant Kane's adverse action and Plaintiff's

8 protected conduct.  *Pratt*, 65 F.3d at 808.

9    Plaintiff contends that he received the informal level response to PVSP 07-00990 on

10 March 21, 2007, the same day that Defendant Kane wrote a RVR against Plaintiff.  Plaintiff filed

11 the informal grievance on March 20, 2007, one day prior to Defendant Kane's adverse action.

12 Plaintiff thus concluded that Defendant Kane must have retaliated against Plaintiff because of

13 these grievances.  While allegations of chronology are sufficient to state a claim at the pleading

14 stage, *Watison*, 668 F.3d at 1114, Plaintiff is required to demonstrate that there remains a triable

15 issue of material fact at the summary judgment stage, *Brodheim*, 584 F.3d at 1269 n.3; *see Pratt*,

16 65 F.3d at 608 (finding that "sheer speculation" of awareness of protected conduct is not

17 sufficient to support a finding of retaliatory motive).  Plaintiff fails to demonstrate that Defendant

18 Kane was aware of any grievances filed by Plaintiff when she wrote a RVR against Plaintiff on

19 March 21, 2007.  Plaintiff contends that because he complained of having to wait in long lines

20 for medication that the nurses were all implicated.  Pl.'s Opp'n 3:23-27.  That is unsupported by

21 the grievance.  Plaintiff's CDCR 1824, filed February 1, 2007, names correctional officers

22 harassing Plaintiff, but does not name nurses. As stated previously, Defendant Kane was not the

23 subject of either grievances, and there is no evidence which indicates that Defendant Kane was

24 made aware of the grievances.

25    Plaintiff's other contentions are unavailing.  Plaintiff contends that LVN Valdez talked to

26 the other nurses.  Pl.'s Decl. 5:2-5 ("LVN Valdez was inside the pillroom that morning [March

27 21, 2007] and it was him who answered the 602's and I have alleged that I was informed and

28 believed that LVN Valdez told her to take my ID, and it was LVN Valdez who wrote down my

1  name on a form that morning."). However, Plaintiff lacks personal knowledge of what was

2  discussed. Plaintiff's speculation that grievance PVSP 07-00990 or the March 20, 2007

3  grievance was discussed cannot be used in support of his opposition. Fed. R. Civ. P. 56(c)(4)

4  (personal knowledge required for declaration); *McSherry v. City of Long Beach*, 584 F.3d 1129,

5  1138 (9th Cir. 2009) ("Summary judgment requires facts, not simply unsupported denials or rank

6  speculation."). Plaintiff contends that Defendant Kane discussed his inmate grievance against

7  her in front of other correctional officers and prison staff. Pl.'s Dep. 104:4-105:25. That,

8  however, only demonstrates Defendant Kane's knowledge of Plaintiff's grievance against her

9  *after* the March 21, 2007 incident had occurred, not of her awareness of the March 20, 2007

10 grievance or PVSP 07-00990.

11      Plaintiff has failed to demonstrate a triable issue of material fact concerning causation for

12 the March 21, 2007 incident involving Defendant Kane. Defendant Kane is entitled to summary

13 judgment as a matter of law regarding this claim. Summary judgment is granted in favor of

14 Defendant Kane and against Plaintiff on these grounds.

15              **2.     May 2007 Incident**

16      Defendants contend that she did not dispense neurontin medication to Plaintiff on May

17 21, 2007 because Plaintiff's prescription had run out, rather than a retaliatory motive. Defs.'

18 Mem. P. & A. 4:12-27, 10:14-21. Plaintiff received Neurontin the next day, after Dr. Vilaysane

19 prescribed Neurontin for Plaintiff. *Id.* Defendants thus contend that there was no retaliatory

20 motive in not dispensing Neurontin to Plaintiff on May 21, 2007. *Id.*

21      Plaintiff does not dispute this, contending that May 21, 2007 is irrelevant to his claims in

22 this action. Pl.'s Opp'n 5:3-18. However, Plaintiff contends that Defendant Kane was not

23 working on May 21, 2007. *Id.* Plaintiff contends that he did not receive his medication from

24 Defendant Kane on May 24, 2007. Pl.'s Decl. ¶ 10.

25      Construing the facts in the light most favorable to Plaintiff as the non-moving party,

26 Defendant Kane denied Plaintiff his pain medication on May 24, 2007. The denial of pain

27 medication is a sufficient adverse action for purposes of retaliation. *See Pratt*, 65 F.3d at 806

28 (retaliation need not be an independent constitutional violation); *Brodheim*, 584 F.3d at 1270

1  (mere threat of harm can be an adverse action).  Plaintiff has raised a genuine dispute of material

2  fact to demonstrate the adverse action was because of Plaintiff's protected conduct.

3       However, Plaintiff has failed to raise a genuine dispute with regards to a retaliatory

4  motive.  While Plaintiff maintains that Defendant Kane complained loudly to other correctional

5  officers and nurses about Plaintiff's grievance against her for the May 24, 2007 incident, Pl.'s

6  Decl. ¶ 12, there is no evidence which would lead to a reasonable inference that she was aware of

7  any lawsuit or grievance *prior* to May 24, 2007.[12]

8       Plaintiff has failed to demonstrate a triable issue of material fact concerning causation for

9  the May 2007 incident involving Defendant Kane.  Defendant Kane is entitled to summary

10 judgment as a matter of law regarding this claim.  Summary judgment is granted in favor of

11 Defendant Kane and against Plaintiff on these grounds.

12          **3.     November 22, 2007 Incident**

13             **a.     Legitimate Penological Goals**

14      Defendant Ross contends that her actions were in furtherance of the legitimate

15 penological goal of preventing inmates from cheeking medication.  Plaintiff does not dispute that

16 preventing inmates from cheeking medication is a legitimate penological goal.  However,

17 Plaintiff again argues that Defendant Ross fabricated her RVR against Plaintiff.  Pl.'s Decl. ¶ 14.

18 Plaintiff contends that his medication of Neurontin and Tylenol-3 was crushed and mixed with

19 water.  *Id.*

20      Construing all facts in the light most favorable to Plaintiff as the non-moving party, there

21 remains a triable issue of material fact as to whether the RVR was in furtherance of a legitimate

22 penological goal.  There remains a dispute as to whether Plaintiff cheeked any of his

23 medications. If the RVR is false, it clearly would fail to serve a legitimate penological goal.

24 

25      [12] In inmate grievance PVSP 07-990, Plaintiff contends in his appeal to the first level, dated April
   6, 2007, that he is being retaliated against for filing the grievance because he was accused of cheeking.
26 Pl.'s Opp'n, Ex. B1-B2.  Defendant Kane wrote the RVR accusing Plaintiff of cheeking.  However,
   PVSP-07-990 concerned Plaintiff's issues with the delay in receiving pain medications while waiting in
27 line.  There is no evidence that his additional claims of retaliation were ever addressed by that grievance,
   and no evidence that Defendant Kane was aware that she was being accused of retaliation by that
28 grievance.  Thus, no retaliatory motive is reasonably inferred.

1  Defendant Ross's  motion for summary judgment is denied on these grounds.

2          **b.   Causation**

3          Defendant Ross contends that there is no retaliatory motive against Plaintiff for filing an

4  inmate grievance.  Defs.' Mem. P. & A. 11:14-26.  Defendant Ross contends that proximity

5  alone is insufficient to demonstrate causation at the summary judgment stage.  *Id.*  The appeal in

6  question was a grievance filed against correctional officer Mendoza on November 18, 2007.

7  Pl.'s Dep. 150:24-151:16; Compl., Ex. N-1.

8          Plaintiff contends that he filed the inmate grievance against correctional officer Mendoza

9  on November 18, 2007 by dropping it off in the box in front of the clinic.  Pl.'s Decl. ¶ 13.  On

10 November 27, 2007, officer Mendoza sent the grievance to the appeals coordinator and on

11 November 28, 2007, Defendant Ross signed and filed the RVR against Plaintiff.  *Id.*  Plaintiff

12 again contends that the chronology of events demonstrate a retaliatory motive.

13         Based on the undisputed facts, construed in the light most favorable to Plaintiff as the

14 non-moving party, Plaintiff has failed to demonstrate a retaliatory motive by Defendant Ross.

15 Plaintiff concludes that Defendant Ross wrote the RVR in retaliation because of the proximity of

16 the occurrences.  That, however, is insufficient at the summary judgment stage.  *Brodheim*, 584

17 F.3d at 1269 n.3.  Plaintiff speculates that Defendant Ross and officer Mendoza discussed this

18 inmate grievance.  Speculation is not based on personal knowledge.  Plaintiff presents no

19 evidence that indicates Defendant Ross was aware of the grievance.

20         Plaintiff has failed to demonstrate a triable issue of material fact concerning causation for

21 the November 22, 2007 incident involving Defendant Ross.  Defendant Ross is entitled to

22 judgment as a matter of law regarding this claim.  Summary judgment is granted in favor of

23 Defendant Ross and against Plaintiff on these grounds.

24         **B.   March 20, 2007 RVR and Habeas Corpus**

25         The United States Supreme Court has held that an inmate does not present a cognizable

26 claim under 42 U.S.C. § 1983 if a judgment in the prisoner's favor would necessarily imply the

27 invalidity of a deprivation of good-time credits, regardless of whether the plaintiff actually seeks

28 restoration of the lost credits. *Edwards v. Balisok*, 520 U.S. 641, 644, 647-48, (1997). Such a

1  claim must instead be brought first as a petition for writ of habeas corpus. *Heck v. Humphrey*,

2  512 U.S. 477, 481(1994); *Ramirez v. Galaza*, 334 F.3d 850, 855-56 (9th Cir. 2003).

3  Defendants contend that because Plaintiff lost good time credits for the March 20, 2007

4  RVR, he must first bring a successful writ of habeas corpus that overturns the RVR before he can

5  pursue a § 1983 action.  Defs.' Mem. P. & A. 14:3-20.  This argument fails on several grounds.

6  First, Plaintiff contends that his good time credits were restored.  Pl.'s Opp'n 21:25-22:20.  Thus,

7  without the loss of good time credits, Defendants' arguments are moot.  Second, these line of

8  cases are applicable only to situations in which a prisoner's sentence is necessarily affected by

9  the outcome of the § 1983 action.  *Balisok,* 520 U.S. at 646-48.  Plaintiff is serving a life

10 sentence without parole.  Good time credits do not appear to affect the duration of his sentence.

11 *Ramirez*, 334 F.3d at 858.  Accordingly, this argument is unpersuasive, and summary judgment

12 will not be granted on these grounds.

13  **C.**      **Eighth Amendment**

14  The Eighth Amendment prohibits cruel and unusual punishment.  "The Constitution does

15 not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation and

16 citation omitted).   A prisoner's claim of inadequate medical care does not rise to the level of an

17 Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal

18 civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate

19 indifference in doing so.'"  *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting

20 *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  The deliberate

21 indifference standard involves an objective and a subjective prong.  First, the alleged deprivation

22 must be, in objective terms, "sufficiently serious . . . ."  *Farmer*, 511 U.S. at 834 (citing *Wilson v.*

23 *Seiter*, 501 U.S. 294, 298 (1991)).  Second, the prison official must "know[] of and disregard[]

24 an excessive risk to inmate health or safety . . . ."  *Id.* at 837.

25  "Deliberate indifference is a high legal standard."  *Toguchi*, 391 F.3d at 1060.  "Under

26 this standard, the prison official must not only 'be aware of the facts from which the inference

27 could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the

28 inference.'"  *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837).  "'If a prison official should have

1   been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no

2   matter how severe the risk.'"  *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175,

3   1188 (9th Cir. 2002)).

4          Defendants contend that it was not deliberate indifference for 1) Defendant Kane to

5   refuse to dispense Neurontin on May 21, 2007, when the prescription ran out; 2) Defendant Kane

6   administered Neurontin to Plaintiff  on May 24, 2007; 3) Plaintiff's missing one day of pain

7   medication in May 2007 is not an omission sufficiently harmful to evidence deliberate

8   indifference to serious medical needs; 4) Defendants Kane and Ross were not subjectively

9   deliberately indifferent because they believed Plaintiff was cheeking his medications; 5)

10  Plaintiff's anti-seizure medication was not discontinued; 6) Defendants Ross and Kane are not

11  liable for Dr. Vilaysane's decision to temporarily discontinue Plaintiff's pain medication; 7) it

12  was not deliberate indifference for Dr. Vilaysane to temporarily discontinue Plaintiff's pain

13  medication due to the November 22, 2007 cheeking incident; and 8) Defendants are entitled to

14  qualified immunity.  Defs.' Suppl. Mem. P. & A. 2:1-19.

15          **1.     May 2007 Incident**

16              **a.     Objective Prong**

17          Defendant contends that missing one day of pain medication is not a sufficiently serious

18  harm to demonstrate deliberate indifference to a serious medical need.  *Id.* at 4:17-5:9.  Plaintiff

19  contends that the denial of medication caused him severe pain and resulted in the loss of a night's

20  sleep.  Pl.'s Brief 11:13-14.  Defendants have the initial burden of demonstrating that Plaintiff

21  was not deprived of the "'minimal civilized measures of life's necessities.'"  *Frost v. Agnos*, 152

22  F.3d 1124, 1128 (9th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).

23  Defendants contend that one day of failing to administer pain medication does not constitute

24  deliberate indifference.  Defs.' Supp. Mem. P. & A. 4:23-5:7 (citing *Frost*, 152 F.3d at 1130;

25  *Berry v. Hunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994) (per curiam); *Wood v. Housewright*, 900

26  F.2d 1332, 1335 (9th Cir. 1990); *O'Loughlin v. Doe*, 920 F.2d 614, 617 (9th Cir. 1990)).

27          Here, Plaintiff provided a declaration that he suffers from chronic back pain.  However,

28  Plaintiff declares that he suffered pain for one night.  This is not sufficient to demonstrate a

20

1  sufficiently serious harm.  The Court does not find that one night of pain rises to the level of a

2  serious medical need within the meaning of the Eighth Amendment.  Even construing the facts in

3  the light most favorable to Plaintiff as the non-moving party, there is no genuine dispute of

4  material fact regarding a sufficiently serious harm for purposes of the Eighth Amendment.

5                               **b.   Subjective Prong**

6           Defendant Kane also contends that the only day that Plaintiff did not receive his pain

7  medication Neurontin was May 21, 2007, not May 24, 2007, and that she cannot dispense

8  medication without a current prescription.  Defs.' Supp. Mem. P. & A. 3:21-4:14.  Plaintiff

9  attests that Defendant Kane did not dispense medication on May 24, 2007, and that he had a valid

10  prescription at the time.  Pl.'s Statement 3:8-10, 3:27-4:2, Doc. 63.  Based on the facts construed

11  in the light most favorable to Plaintiff, Defendant Kane denied Plaintiff medication on May 24,

12  2007, despite Plaintiff having a valid prescription.  However, this incident occurred only once.

13  There is no evidence which raises a genuine dispute of material fact as to Defendant Kane

14  knowing of and disregarding an excessive risk of serious harm to Plaintiff's health.[13]  This is an

15  isolated occurrence of neglect, which fails to rise to the level of deliberate indifference.  *Wood v.*

16  *Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).  Construing the facts in the light most

17  favorable to Plaintiff as the non-moving party, Plaintiff has not raised a genuine dispute of

18  material fact for the subjective component of an Eighth Amendment claim.  Defendant Kane is

19  entitled to judgment as a matter of law.  Summary judgment regarding the May 2007 incident

20  will be granted.

21  *///*

22

23          [13]  Plaintiff contends that on May 24, 2007, Defendant Kane showed him a Physician's order

24  which purported to discontinue Plaintiff's prescription for Neurontin.  Pl.'s Supp. Decl. 4:18-27; Ex. D-6.
     Plaintiff contends that the Physician's order actually changed Plaintiff's dosage from twice a day to three

25  times a day.
            Defendants contend that Plaintiff contradicts his own testimony from his deposition.  Plaintiff

26  had testified that he did not read the document which Defendant Kane relied upon as justification for
     denying his pain medication on May 24, 2007.  Pl.'s Dep. 115:2-116:23.  Plaintiff does not explain how

27  he knows that Exhibit D-6 is the correct document, given his deposition testimony.  Even if Plaintiff had
     explained this inconsistency, he has not presented a genuine dispute of material fact regarding deliberate

28  indifference.

                                            21

## 2.    December 2007 Denial Of Treatment

Defendant Ross contends that she personally observed Plaintiff cheeking and issued the November 22, 2007 RVR.  Defs.' Supp. Mem. P. & A. 6:7-21, Doc. 56.  Dr. Vilaysane discontinued Plaintiff's pain medication Neurontin and Tylenol-3 because of Plaintiff's cheeking.  *Id.*  Defendant Ross contends that she did not know or expect Dr. Vilaysane to discontinue Plaintiff's pain medication as a result.  *Id.*[14]

Plaintiff contends that he was not cheeking because the pills were crushed.  Pl.'s Brief 18:14-17, Doc. 62.  Plaintiff contends that it is standard practice at the prison to discontinue the medication of a prisoner accused of cheeking.  Pl.'s Statement 5:25-6:3, Doc. 63.  Plaintiff further contends that if he had the opportunity to discuss this with the doctor, his medication would not have been discontinued.  Plaintiff's pain medication was discontinued from December 2 to December 19 of 2007.

Plaintiff has presented a triable issue of material fact as to the objective prong of the deliberate indifference claim.  With regards to the subjective prong, deference in the administration of a prison, especially in light of the needs to preserve discipline and maintain internal security, should be given.  *Norwood v. Vance*, 591 F.3d 1062, 1067 (9th Cir. 2010).  Thus, the practice of discontinuing pain medication for inmates accused of cheeking may be in furtherance of such goals.  There is a dispute of material fact as to whether Plaintiff was cheeking his pain medication.  If he was not, then discontinuing Plaintiff's pain medication would not be in furtherance of preserving discipline and maintaining internal security.

Defendant Ross contends that it was Dr. Vilaysane, and not her, who discontinued the pain medication.  Plaintiff does not dispute that it was Dr. Vilaysane who signed the form

---

[14] Defendant Kane contends that the RVR she wrote against Plaintiff on March 20, 2007 was not the cause of any deliberate indifference to Plaintiff.  Supp. Mem. P. & A. 6:22-26.  Plaintiff does not dispute this, contending that it was the denial of pain medication on May 24, 2007 that was deliberately indifferent.  Pl.'s Statement 5:10-13.

Defendants also contend that Plaintiff received his anti-seizure medication from December 2 to December 19 of 2007.  Again, Plaintiff does not appear to dispute this.  However, Plaintiff contends that Defendant Kane failed to provide his antiseizure medication on May 24, 2007.  Pl.'s Brief 16:10-24, Doc. 62.  As stated previously, summary judgment is granted as to this claim.

1    discontinuing his medication on November 28, 2007.  *See* Pl.'s Suppl. Decl., Ex. D-5,

2    Physician's Orders.  However, Plaintiff attests that it is standard practice at the prison to

3    discontinue pain medication for inmates accused of cheeking, submitting a declaration signed by

4    several inmates to that effect. Pl.'s Decl., Ex. E, Inmate Decl., at 62 of 92, Doc. 64.   However,

5    this is not evidence that the discontinuation of medication is caused by a nurse such as Defendant

6    Ross.  All Plaintiff has demonstrated is that when a LVN accused certain inmates of cheeking

7    medication, that inmate's medication was cancelled.  It is only speculation that Defendant Ross

8    directly participated in discontinuation of Plaintiff's pain medication.

9            Plaintiff contends that Defendant Ross submitted a RVR for cheeking against Plaintiff on

10   November 28, 2007, and personally, or indirectly through another nurse, submitted a note,

11   prepared by her, to Dr. Vilayasane regarding Plaintiff's alleged cheeking on the same day.  Pl.'s

12   Statement 4:18-20, Doc. 63.  Again, Plaintiff speculates as to who provided Dr. Vilyasane with

13   the physician order to discontinue Plaintiff's pain medication.

14           Plaintiff contends that the nurses control when an inmate receives an appointment to see

15   the doctor.  Pl.'s Statement 5:14-19.  Plaintiff contends that because the nurses denied him an

16   immediate doctor's appointment, Plaintiff suffered in pain.  Even accepting this statement as

17   true, Plaintiff again fails to link Defendant Ross to the denial of an immediate doctor's

18   appointment.  Construing all facts in light most favorable to Plaintiff as the non-moving party,

19   there is no genuine dispute of material fact with regards to the subjective prong for Plaintiff's

20   Eighth Amendment claim against Defendant Ross.  Summary judgment will be granted in favor

21   of Defendant Ross and against Plaintiff for this claim.

22           **D.    State Law Claims**

23           Plaintiff contends a violation of California Government Code section 810, *et seq.*  Pl.'s

24   Opp'n 1.  A review of the record indicates that no such allegation remains.  This action proceeds

25   only on Plaintiff's First and Eighth Amendment claims.  No additional state law claims will be

26   permitted here.

27           **E.    Qualified Immunity**

28           Defendants contends that they are entitled to qualified immunity.  Because the Court will

1  grant summary judgment for Defendants as to all claims, the Court does not address Defendants'

2  qualified immunity arguments.

3  **V.**     **Conclusion And Order**

4       Based on the foregoing, it is HEREBY ORDERED that:

5       1.       Defendants' motion for summary judgment, filed April 4, 2011, is GRANTED in

6                full;

7       2.       Summary judgment is granted in favor of Defendants and against Plaintiff as to all

8                claims; and

9       3.       Judgment will be entered accordingly.

10      IT IS SO ORDERED.

11      **Dated:**   **June 19, 2012**          **/s/ Dennis L. Beck**
                                            UNITED STATES MAGISTRATE JUDGE

24